**This order is SIGNED.**

**Dated: March 30, 2018**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>MOUNTAIN WEST INDUSTRIES, LLC,<br><br>Debtor.<br>_____<br><br>GEORGE B. HOFMANN, in his capacity as Chapter 7 Trustee of Mountain West Industries, LLC,<br><br>Plaintiff,<br>vs.<br><br>DAMARC QUALITY INSPECTION SERVICES, LLC, and EDWARD D. MANSELL,<br><br>Defendants. | Bankruptcy Number: 14-32190<br><br>Chapter 7<br><br><br><br>Adversary Proceeding No. 15-02262<br><br>Hon. Kevin R. Anderson |

**MEMORANDUM DECISION ON DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DOCKET NO. 57) RE: CHOICE-OF-LAW**

On December 15, 2015 George B. Hofmann (the "Trustee"), in his capacity as Chapter 7

Trustee of the Mountain West Industries, LLC bankruptcy case, filed this adversary proceeding

against Damarc Quality Inspection, Services, LLC ("Damarc") for breach of contract, professional

negligence, recovery of fraudulent transfers, and a denial of Damarc's claims against the bankruptcy estate.[1]

On December 21, 2017, Damarc filed a motion for summary judgment asserting all claims should be dismissed because: (1) Utah law applies to the contracts; (2) the Exculpatory Clause in the contracts at issue exempts Damarc from all liability; (3) Utah's economic loss rule precludes liability for a negligence claim; and (4) Damarc gave reasonably equivalent value for its services to Mountain West Industries, LLC. The Trustee responded, asserting that the contracts between the parties contain a Minnesota choice-of-law provision, and that under Minnesota law, Damarc is liable for damages on the claims for breach of contract and professional negligence.

Based on the impact of the choice of law on a final determination of this dispute, the Court limits its initial ruling to whether Utah or Minnesota law applies. The Court held a hearing on the motion for summary judgment on February 23, 2018. Richard C. Terry appeared on behalf of Damarc. William Garbina appeared on behalf of the Trustee.

## I.    BACKGROUND AND UNDISPUTED FACTS.

### A.    The Tanker Trailers

The Debtor, Mountain West Industries, LLC ("Mountain West"), was a manufacturer of utility and cargo trailers, operating out of Tooele, Utah. In 2013, Mountain West endeavored to expand its product line to include the manufacture of tanker trailers suitable for over-the-road transportation of compressed, liquid gases. Tanker trailers hauling compressed gas on public roads are subject to extensive regulation, inspection, and certification requirements regarding their design and construction. The regulations are referred to as "MC-331," and such trailers are known

---

[1] The Trustee's complaint also named the design engineer, Edward D. Mansell, as a defendant, but the Trustee has settled with that party.

as "MC-331 Tanker Trailers." MC-331 designs require inspection by an ASME[2]-authorized inspector. To perform this service, Mountain West hired Damarc, an entity incorporated in Minnesota but with its principal place of business in Wisconsin. The parties signed two contracts – one in 2012 and one in 2013 – that are identical in most respects, with each containing a choice-of-law provision stating that they "shall be interpreted and enforced in accordance with the laws of the State of Minnesota" (the "Contracts").[3] The Contracts also contain exculpatory clauses that Damarc argues exempts it from any liability arising under the Contracts (the "Exculpatory Clause").

Mountain West proceeded with the construction of three MC-331 Tanker Trailers, but it was subsequently discovered they could not be sold because their nozzles did not comply with the MC-331 design specifications (the "Non-Compliant Nozzles"). Mountain West asserts that because Damarc failed to properly perform its contracted-for services, the three MC-331 Tanker Trailers are now essentially worthless. This situation contributed to Mountain West filing a chapter 7 bankruptcy petition on November 18, 2014, and George B. Hofmann was appointed as the Chapter 7 Trustee.

### B. Undisputed Facts

1.      Damarc is incorporated in Minnesota.[4] Damarc is headquartered and has its place of business in Wisconsin.[5] The Contracts state that Damarc is a Wisconsin corporation.[6]

---

[2] "American Society of Mechanical Engineers."

[3]  Docket. No. 57, Ex. A (2013 Contract), ¶10.2; Docket. No. 57, Ex. B (2012 Contract), ¶10.2.

[4] February 23, 2018 Hearing at 9:40:19 a.m. to 9:40:42 (Judge: "Is there really a dispute that [Damarc is] incorporated in Minnesota, place of business Wisconsin?" Mr. Garbina: "No, there isn't.").

[5]  Docket. No. 79, p. 7, ¶ 4.

[6]  Docket. No. 57, Ex. A, p. 1; Docket No. 57, Ex. B, p. 1.

2.      Mountain West is domiciled in Utah with its principal place of business in Utah. Mountain West manufactured the MC-331 Tanker Trailers in Utah, and Damarc physically inspected the MC-331 Tanker Trailers in Utah. The alleged injury occurred in Utah with the supposedly injurious conduct occurring both in Utah and Wisconsin.[7]

3.      Mountain West and Damarc entered into the Contracts in 2012 and 2013. The Contracts are titled "*Agreement For AIA[8] Third Party Inspection Services.*"[9] Mountain West and Damarc negotiated and executed the Contracts from their respective headquarters in Utah and Wisconsin.[10]

4.      The Contracts contain the following choice-of-law provision: "This Agreement shall be interpreted and enforced in accordance with the laws of the State of Minnesota."

5.      The Contracts also contain the following Exculpatory Clause:

> 8. Indemnity
>
> > 8.1 The company agrees that DAMARC is not liable for any claims, costs, actions, and/or demands arising from this Agreement or the activities conducted there under, except as provided in 8.2 below. This includes, but is not limited to:
> >
> > > a) Services provided by DAMARC;
> > >
> > > b) Use or misuse by The [sic] company of any certificate, license or imprimatur provided by DAMARC under this Agreement;
> > >
> > > c) Any breach of this Agreement.
> >
> > 8.2 The company shall not be liable for any claims, costs, actions, and/or demands arising from personal injuries or injuries to property suffered by DAMARC employees or contractors in the performance of this Agreement.[11]

---

[7] Docket. No. 79, p. 7-8, ¶¶ 4-10.

[8] "Authorized Inspection Agency."

[9] Docket No. 57, Ex. A (2013 Contract); Docket No. 57, Ex. B (2012 Contract).

[10] Docket No. 79, p. 8, ¶6.

[11] Docket No. 79, p. 9, ¶14; Docket No. 79, p. 11, ¶ 18.

## II. ANALYSIS.

### A. Summary of the Parties' Positions

The Trustee asserts that the choice-of-law provisions in the Contracts control, and thus this Court should apply Minnesota law to the "interpretation and enforcement" of the Contracts. Damarc argues that other than its incorporation in Minnesota, that state has no other contacts to the parties or the transaction; thus, Minnesota has little to no interest in the outcome of the case. Therefore, under applicable Utah law, the Court should apply the Restatement (Second) of Conflict of Laws, § 187(2), and determine if two or more states have an interest in the litigation. If so, the Court should consider which state has the more substantial relationship to the parties or the transaction, which, it argues, is Utah. Ostensibly, Utah law favors Damarc and Minnesota law favors the Trustee which underlies the basis for the choice-of-law dispute between the parties.[12]

### B. Utah Law Determines Which Choice-of-Law Rules Apply

A federal court exercising supplemental jurisdiction over state-law claims "applies the substantive law, including choice of law rules, of the forum state."[13] The adversary proceeding is filed in the Utah Bankruptcy Court. "Since Utah is the forum state, Utah's choice of law rules determine the outcome of the conflict."[14]

### C. Overview of Utah's Choice-of-Law Jurisprudence

The choice-of-law dispute under these facts has challenged the interpretive powers of all parties (including the Court) as to how a Utah court would rule. For purposes of analysis, the Court

---

[12] At this time, the Court is not making a finding on which law favors what party.

[13] *Bancoklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1103 (10th Cir. 1999) (quoting *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994)).

[14] *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002) (citations omitted).

will visit in chronological order both federal and state cases that constitute Utah's choice-of-law jurisprudence.

The first case is *Unibase Sys. v. Professional Key Punch ("Unibase")* decided in 1987.[15] Unibase, a Utah corporation, and Professional Key Punch, a Texas and California corporation, entered into a contract with a Utah choice-of-law provision.[16] Professional Key Punch argued that even if the Utah choice-of-law provision controlled as to the contract claims, its fraud claims against Unibase should be governed by a "most significant contacts" analysis, which would point to Texas.[17] The District Court commented that, at the time, Utah law provided little guidance as to the particular fact situation, so it looked to the Restatement of Conflict of Laws:

> It is acknowledged in the Restatement § 187 and by the caselaw generally that **where the parties have made an effective choice of law covering their contractual rights and duties the law of the chosen jurisdiction will be applied**. It is only when the parties have failed to make a valid choice of law that courts apply traditional conflict of laws rules or apply the "most significant contacts" analysis of the Restatement § 188.[18]

*Unibase* thus applied the Utah choice-of-law provision to both the contract and the fraud claims.

Therefore, *Unibase* holds that if the parties have made an "effective" choice-of-law selection in their contract, the choice-of-law provision should control.[19] However, the Court recognized in a footnote that a choice-of-law provision may not be honored if its application would be contrary to the fundamental policy of the state with a greater interest in the litigation:

> However, the Restatement § 187(2)(b) provides that the parties choice of law may not be honored if "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188,

---

[15] *Unibase Sys. v. Prof'l Key Punch*, No. C86-213G, 1987 U.S. Dist. LEXIS 16741, at *1 (D. Utah 1987).

[16] *Id.*

[17] *Id.* at *10.

[18] *Id.* at *8.

[19] *Id.* at *12.

would be the state of the applicable law in the absence of an effective choice of law by the parties."[20]

The next contractual choice-of-law case arose six years later in the Utah Supreme Court. In *Prows v. Pinpoint Retail Sys., Inc. ("Prows")*,[21] a Canadian software company sold its products throughout the United States. Consequently, its contracts contained a New York choice-of-law and forum selection clause.[22] Prows, a Utah individual, entered into a contract with Pinpoint to provide software that Prows would then sell to a Utah corporation.[23] Pinpoint eventually cut Prows out as the middleman and dealt directly with the Utah company. Prows sued Pinpoint in a Utah state court for breach of contract.[24] The lower court denied Pinpoint's motion to dismiss for improper venue.[25]

On appeal, Pinpoint explained that even though it had no connections with New York, it selected that state to limit the number of forums it might be required to bring or defend an action.[26] Pinpoint then argued that the contract's choice-of-law provision required that it be "interpreted in accordance with and governed by the laws of the State of New York."[27] And under New York law, Utah had to enforce the New York forum selection clause.[28] The Utah Supreme Court disagreed, citing to the Restatement:

> The Second Restatement of Conflicts of Laws [§ 187(2)(a)] provides:
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless . . .

---

[20] *Id.* at n.4 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b) (1971)).

[21] *Prows v. Pinpoint Retail Sys. Inc.*, 868 P.2d 809 (Utah 1993).

[22] *Id.* at 810.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 811.

[27] *Id.* at 810.

[28] *Id.* at 811.

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties [sic] choice.[29]

While the Court acknowledged a reasonable basis for Pinpoint's New York choice-of-law provision, it was nonetheless "without effect" because, as guided by the Restatement of Conflict of Laws, New York had no interest in the lawsuit:

> The comments to section 187 state that the rule of subsection (2) "applies only when two or more states have an interest in the determination of the particular issue"; it does not apply "when all contacts are located in a single state and when, as a consequence, there is only one interested state." *Id.* at cmt. d. **New York has no interest in the determination of this case.** A Utah plaintiff brought this suit against a Utah defendant and a Canadian defendant. The VAR agreement was to be performed in Utah. It was signed in Utah, and the alleged breach and tortious conduct occurred here. **All relevant "contacts" occurred in Utah, and as a consequence, Utah is the only state with an interest in the action. For this reason, we are not bound by New York law**. . . .[30]

Thus, *Prows* holds that a contract's choice-of-law provision will control unless the chosen state has no interest in the determination of the case.

Nineteen years later, in *Brigham Young Univ. v. Pfizer, Inc. ("Pfizer")*,[31] the parties had entered into a joint-venture research agreement with a Missouri choice-of-law provision. The District Court held that the Missouri choice-of-law provision would control.[32] However, the plaintiff argued that its breach of fiduciary duty claim arose in tort rather than in contract; thus, "when the tort law of two states differs, Utah uses the Restatement's four-factor, 'most significant relationship test' to decide what law governs."[33] Citing to the 1987 case of *Unibase*, the District Court interpreted Utah's choice-of-law rules as follows:

---

[29] *Id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187, cmt. d (1971)).

[30] *Id.* (emphasis added)

[31] *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-CV-890 TS, 2012 U.S. Dist. LEXIS 37086, at *1 (D. Utah 2012).

[32] *Id.*

[33] *Id.* at *5.

However, this Court has recognized that while Utah law governs the choice of law analysis, **"[i]t is only when the parties have failed to make a valid choice of law that courts apply traditional conflict of laws rules or apply the 'most significant contacts' analysis of the Restatement**." Thus, to the extent that the parties' agreement has specified a choice of law for claims such as BYU's, the contract and not the "most significant contacts" analysis governs.[34]

In a footnote, the Utah District Court noted that *Prows* did not change the validity of its prior holding in *Unibase*:

BYU seeks to discredit *Unibase* by noting that the case was decided before Utah adopted the Most Substantial Relationship test found in Restatement § 187.[35] However, **Utah's adoption of Section 187, which explicitly states that the Most Substantial Relationship test is not to be used if the parties have included a choice of law provision**, merely confirms the validity of *Unibase*, which applied Section 187 in reaching its conclusion.[36]

Two years after *Pfizer*, the Utah Court of Appeals entered the fray on the choice-of-law issue in *Rutherford v. Talisker Canyons Fin. Co., LLC ("Rutherford")*.[37] Because *Rutherford* is the most recent statement of Utah's choice-of-law jurisprudence, and because it is the most factually similar to the case at bar, the Court will follow its holding. In *Rutherford,* young Levi Rutherford, a Utah resident, joined a Utah ski race team sponsored by the United States Ski and Snowboard Association ("USSA").[38] To join the ski team, Rutherford's father had to sign a release form indemnifying USSA from any injury "regardless of USSA's negligence."[39] The release also contained a Colorado choice-of-law provision. While skiing at a USSA event at a Utah ski resort, Levi was injured, and his parents sued in a Utah state court. Among other issues, the lower court ruled "that the Colorado choice-of-law provision in the USSA release was not enforceable based

---

[34] *Id.* at *5-6 (quoting *Unibase Sys. v. Prof'l Key Punch*, No. C86-213G, 1987 U.S. Dist. LEXIS 16741, at *1 (Utah 1987)).

[36] *Id.* at n.11 (emphasis added). *Unibase* was decided in 1987, so BYU was referring to the *Prows* case, decided in 2002, that adopted the "substantial relationship test" of the Restatement (2d) of Conflict of Laws § 187.

[37] *Rutherford v. Talisker Canyons Fin. Co., LLC*, 333 P.3d 1266, 1273 (Utah Ct. App. 2014).

[38] *Id.* at 1268.

[39] *Id.*

on the court's determination that 'Utah is the only state that has an interest in the outcome of the case.'"[40]

On appeal, the Utah ski resort argued that the Colorado choice-of-law provision was reasonable because the USSA held more events and had more athletes compete in Colorado than anywhere else; thus, Colorado had "a particular interest in the outcome of this case."[41] One might think, based on the federal cases of *Unibase* and *Pfizer*, that the Utah Court of Appeals would simply read the release and apply its choice-of-law provision – but one would be wrong:

> To determine whether the choice of Colorado law will govern our substantive interpretation of the USSA release, **we must determine first whether "two or more states have an interest in the determination of the particular issue"** in this case and, if so, we then analyze whether Colorado has a "substantial relationship to the parties or the transaction" or there is a "reasonable basis for the parties['] choice."[42]

Interesting. The first step, according to *Rutherford*, is not to apply the contract's choice-of-law provision, but to ascertain whether two or more states have an interest in the outcome of the lawsuit.

Finding that both Utah and Colorado had an interest in the litigation, the court went on to apply the Restatement of Conflict of Laws to resolve a choice-of-law dispute in a contract:

> Besides analyzing what contacts a state may have with the case, *Prows* does not provide much guidance for our analysis of whether Colorado has an interest in this case. Indeed, *Prows* appears to use the terms "interest in," "substantial relationship," and "relevant contacts" interchangeably. Accordingly, we look to the Restatement for guidance. The Restatement lists several factors a court might consider in analyzing the significance of a state's relationship to the parties and transaction at issue, including, "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the

---

[40] *Id.* at 1273.

[41] *Id.*

[42] *Id.* at 1273-74 (emphasis added) (citing *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 811 (Utah 1993) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(a) & cmt. d (Supp.1988))).

subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."[43]

The Court goes on to note the reasonableness of selecting Colorado law, but nonetheless finds the choice-of-law provision ineffective because of Colorado's lack of a "substantial relationship" with the parties or the transaction:

> All of these factors, however, relate to the reasonableness of USSA's choice of Colorado law, not Colorado's interest in or substantial relationship with the parties in this case or the transaction at issue. **As dictated by *Prows*, USSA's interest in having one state's laws apply to its contracts with its members located throughout the country, and the logic behind its choice of Colorado law specifically, does not vest in the state of Colorado a "substantial relationship" or "interest in" the parties or the transaction before us.** And, as in *Prows*, the state of Utah clearly has an interest in the determination of this case; the Rutherfords entered into the USSA release while domiciled in Utah, they remained domiciled in Utah at the time of Levi's injury, Levi's injury occurred in Utah, USSA is a Utah entity, and the Ski Resort's principal place of business is in Utah. **Accordingly, the choice-of-law provision does not control in this case and we rely on Utah law to determine the enforceability of the release**.[44]

Thus, this Court interprets *Prows* and *Rutherford* as holding that to be effective, a choice-of-law provision needs to be more than just reasonable – it must also involve the selection of a state that has "a 'substantial relationship' or 'interest in' the parties or the transaction before us."[45] If the choice-of-law state lacks such connections, then Utah will apply the factors of § 188(2) of the Restatement "in analyzing the significance of a state's relationship to the parties and transaction at issue."[46]

The Trustee cites to comments in the Restatement of Conflict of Laws and to cases from other jurisdictions[47] to argue that "the incorporation of one party in the state whose law is chosen

---

[43] *Id.* at 1274 (citation omitted) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971)).

[44] *Id.* at 1274-75 (emphasis added) (citation omitted) (quoting *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 811 (Utah 1993)).

[45] *Id.* at 1274.

[46] *Id.*

[47] *See, e.g., Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 608 (2d Cir. 1996).

under the contract is sufficient to satisfy any applicable contacts requirement."[48] Thus, the Trustee argues, because Damarc was incorporated in Minnesota, that fact alone creates a sufficient interest to enforce the Contracts' choice-of-law provision. The Court is not aware of any Utah cases citing to the specific Restatement provisions referenced by the Trustee[49] or to any Utah cases holding that incorporation alone is sufficient to create a "substantial relationship." Thus, it appears Utah has not adopted these aspects of the Restatement. [50] Therefore, the Court will apply the choice-of-law standards articulated in *Prows* and *Rutherford,* which do not adopt the Restatement (Second) of Conflict of Laws, § 187(1), cmt. (c) and (e).[51]

The Trustee also correctly observes that in *Rutherford*, no party to the lawsuit had a connection to Colorado. *Rutherford* implicitly notes this fact when it comments in a footnote: "Because of the manner in which we resolve the issues under this heading, we decline to address what impact, if any, the fact that the Ski Resort is not a signatory to the USSA release may have on the applicability of the release to the Ski Resort."[52] Yet, rather than following *Prows* and simply finding that because no party had a contact with Colorado, Utah law controls, the Utah Court of Appeals proceeded to apply the "substantial relationship" test of the Restatement of Conflict of Laws.

---

[48]   Docket. No. 79 at p. 31-32 (quoting *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 608 (2d Cir. 1996)); RESTATEMENT (SECOND) OF CONFLICT OF LAW, § 187(1), cmt. (c) and (e).

[49]   RESTATEMENT (SECOND) OF CONFLICT OF LAW, § 187(1).

[50]   As to § 187 of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS, *Prows* and *Rutherford* only cite to subsection (2)(a), cmt. (d). The specific quote from *Prows* is: "The comments to section 187 state that the rule of subsection (2) 'applies only when two or more states have an interest in the determination of the particular issue'; it does not apply 'when all contacts are located in a single state and when, as a consequence, there is only one interested state.'" *Prows*, 868 P.2d at 811. *See also Rutherford*, 333 P.3d at 1273.

[51]   *Rutherford* has been certified to the Utah Supreme Court, but its choice-of-law analysis is not an issue on appeal. *Rutherford v. Talisker Canyons Fin. Co., LLC*, 333 P.3d 1266, 1273 (Utah Ct. App. 2014), *cert. granted*, 343 P.3d 708 (2015).

[52]   *Rutherford*, 333 P.3d at 1273, n.11.

Thus, applying *Rutherford's* analysis, this Court must determine first whether two or more states have an interest in the determination of the particular issue; and, if so, analyze whether Minnesota has a substantial relationship to the parties or the transaction. But before following the *Rutherford* analysis, the Court will discuss the other Utah cases cited by the parties in support of their arguments.

### D. Distinguishing Other Utah Cases

In their briefs and in oral argument, the parties referenced the following cases. For the reasons stated, the Court finds them distinguishable to the facts of this case.

One of the first cases decided by the Utah Supreme Court on the choice-of-law issue after *Prows* was *American Nat'l Fire Ins. Co. v. Farmers Ins. Exch. ("American National")*,[53] that involved a dispute between two Idaho insurance companies arising from an accident in Utah. The injured party filed suit in Utah, but later settled, so the only issue was the allocation of liability between the insurance companies for the Idaho car owner and the Idaho car driver.[54] The application of Utah or Idaho law made a substantial difference as to each company's liability. Since both insurance contracts arose in Idaho with Idaho individuals, and because Idaho had a specific statute limiting the liability of the driver's insurance, the Utah Supreme Court held that "the most significant relationship test as explained in Restatement of Conflict section 188 is the appropriate rule for Utah courts to apply to a conflict of laws question in a contract dispute."[55] Because the insurance companies and the individual defendants were from Idaho, and because the Utah court did not wish to upset the parties' reasonable expectations arising from the Idaho

---

[53] *American Nat'l Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186 (Utah 1996).
[54] *Id.* at 187.
[55] *Id.* at 190.

insurance statute, the Utah Supreme Court applied Idaho law to resolve the contract dispute. While this case is factually distinguishable, the Court finds that *American National's* approach is consistent with the approach taken in *Prows* and *Rutherford* regarding the need to consider the "significant relationship test" of the Restatement of Conflict of Laws § 188(2) in resolving choice-of-law issues.

In *Jacobsen Constr. Co., Inc. v. Teton Builders ("Jacobsen")*,[56] both parties were Wyoming residents and worked on a construction project in Wyoming. The issue was the enforcement of the Utah forum selection clause in their contract. *Jacobsen* is distinguishable because the parties agreed that Wyoming law governed enforcement of the forum selection clause.[57] The rest of *Jacobsen* deals only with the forum selection clause. Therefore, *Jacobsen* is not a choice-of-law decision.

In *Innerlight, Inc. v. Matrix Group, LLC ("Innerlight")*,[58] the plaintiff, a multi-level marketer of skin-care products, had its principal place of business in Utah, while the defendant, a supplier of skin-care products, had its principal place of business in Florida. Their contract contained a forum selection and a choice-of-law clause in favor of Florida. The lower court held that while the forum selection and choice-of-law clauses were valid, the alleged failure of a condition precedent rendered them unenforceable.[59] On appeal, the Utah Supreme Court found the clauses to be enforceable without regard to the condition precedent and remanded the case for further proceedings.[60] *Innerlight* is distinguishable because the defendant had its principal place

---

[56] *Jacobsen Constr. Co., Inc. v. Teton Builders*, 106 P.3d 719 (Utah 2005).

[57] *Id.* at 723.

[58] *Innerlight, Inc. v. Matrix Group, LLC.*, 214 P.3d 854 (Utah 2009).

[59] *Id.* at 855.

[60] *Id.* at 858.

of business in Florida, and material aspects of its performance under the contract (i.e., the production and supply of skin-care products) were carried out in Florida. Thus, Florida had a "substantial relationship to the parties or the transaction," and a discussion of the Restatement of Conflict of Laws was not implicated. Therefore, *Innerlight* does not provide specific guidance to the Court under the facts of the present case.

### E.  Application of the *Rutherford* Analysis

For the reasons set forth above, the Court will apply the *Rutherford* analysis to the present case. Because "'two or more states have an interest in the determination of the particular issue,'" we will analyze whether Minnesota has a "'substantial relationship to the parties or the transaction' or there is a 'reasonable basis for the parties['] choice.'"[61] To determine the significance of each state's "relationship to the parties and transaction at issue," the Court applies the factors from the Restatement of Conflict of Laws § 188(2) that include "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

*Utah Connections*: Mountain West is a Utah company with its principal place of business in Utah, and its Chapter 7 bankruptcy case is pending in Utah. Mountain West manufactured the MC-331 Tanker Trailers in Utah. The injury – the installation of the Non-Compliant Nozzles – occurred in Utah.[62] Mountain West and Damarc negotiated and executed the agreement from their respective headquarters in Utah and Wisconsin.[63] The Contracts state that "DAMARC agrees to

---

[61] *Rutherford*, 333 P.3d at 1274 (citing *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 811 (Utah 1993)).
[62] Docket No. 57, p. 6, ¶¶ 5, 8, 9.
[63] Docket No. 57, p. 6, ¶ 6.

provide third party inspection services at the shop or field controlled by the company" [defined as Mountain West Industries, Inc. in Toole, Utah].[64] Damarc physically inspected the vessels in Utah.[65] The Debtor's bankruptcy case, and consequently this adversary proceeding, were filed in Utah.

*Minnesota Connections*: Damarc was incorporated in Minnesota,[66] and the Contracts include a Minnesota choice-of-law provision.[67]

*Wisconsin Connections*: Damarc has its principal place of business in Wisconsin.[68] The Contracts identify Damarc as "a Wisconsin corporation."[69] Mountain West and Damarc negotiated and executed the agreement from their respective headquarters in Utah and Wisconsin.[70] The injurious conduct occurred in both Utah and Wisconsin.[71]

The Restatement of Conflict of Laws § 188(2) directs that "[t]hese contacts are to be evaluated **according to their relative importance** with respect to the particular issue."[72] Based on the facts cited above, Utah clearly has the most significant relationship to the parties and the transaction, followed by Wisconsin and then Minnesota. The Restatement indeed includes the "place of incorporation" as a factor, but relative to the other contacts, this is the least significant as Minnesota is not the place of contracting; it is not the place of negotiation of the contract; it is

---

[64] Docket No. 57, Ex. A (2013 Contract); Docket No. 57, Ex. B (2012 Contract).

[65] Docket No. 57, p. 6, ¶ 7.

[66] Docket No. 79, p. 8, ¶ 4(a).

[67] Docket No. 57, p. 6, ¶ 3.

[68] *Supra*, n.5.

[69] Docket No. 57, Ex. A (2013 Contract); Docket No. 57, Ex. B (2012 Contract).

[70] Docket No. 57, p. 6, ¶ 6.

[71] Docket No. 57, p. 6, ¶ 9.

[72] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (emphasis added).

not the place of performance; it is not the location of the subject matter of the contract; and it is not the domicil, residence, or place of business of either party.

### F.  Reasonable Basis

Next, the Court should also consider if there is a "reasonable basis for the parties' choice."[73] The Contracts include a Minnesota choice-of-law provision, but other than Damarc's incorporation in that state, it has no relationship to the parties or the transaction, and it thus has little to no interest in the determination of the lawsuit. It appears the only basis for Damarc selecting Minnesota was because it was incorporated there. But, as also noted in *Prows* and *Rutherford*, this reason is without effect because Minnesota otherwise has no substantial relationship with the parties or the transaction at issue other than the mere fact that some years ago Damarc incorporated in Minnesota. Without precedent under Utah law that the place of incorporation is sufficient to establish a substantial relationship to and interest in the parties and the transaction, this connection is so tenuous as to be "without effect."[74]

An additional factor in favor of Damarc's position is that the complaint includes a cause of action for professional negligence. In Utah, professional negligence is a tort remedy.[75] In determining choice-of-law as to torts, Utah looks at which state "has the most significant relationship to the occurrence and the parties."[76] In *Waddoups v. Amalgamated Sugar Co.*, the plaintiffs worked in a sugar processing plant in Idaho for a corporation headquartered in Utah. After a serious accident in the Idaho plant, plaintiffs reported food safety violations in Idaho and

---

[73] *Id.*

[74] *Prows v. Pinpoint Retail Sys. Inc.*, 868 P.2d 809 (Utah 1993).

[75] *Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing, LC*, 221 P.3d 234, 247 (Utah 2009) ("[S]ome torts are expressly designed to remedy pure economic loss (e.g., professional negligence, fraud, and breach of fiduciary duty") (quoting *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1263 (Colo. 2000)).

[76] *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1160 (Utah 2002).

were ultimately terminated in Idaho. They filed suit in Utah alleging wrongful termination, infliction of emotion distress, and interference with an economic advantage. The Utah Supreme Court noted that "plaintiffs' claims lie entirely in tort"[77] and thus applied the Restatement of Conflict of Laws § 145,[78] which deals with choice-of-law issues in tort cases. The Utah Supreme Court found that because all of the alleged injuries occurred in Idaho, Idaho law should control.[79]

Applying this logic to the facts of this case, it is again clear that Utah has the most "significant relationship" to the occurrence of the injury and the parties. Thus, this Court will apply Utah law to the tort claim for professional negligence.

Finally, the claim for breach of contract obviously arises under contract law, but when a tort claim is closely related to a contract, "in the absence of compelling reasons to the contrary, those closely related claims ought to be governed by the same law."[80] Because both claims arise out of the Contracts, this Court will apply Utah law to both the breach of contract and the professional negligence claim.

---

[77] *Id.* at 1160.

[78] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

[79] *Waddoups*, 54 P.3d at 1160.

[80] *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-CV-890 TS, 2012 U.S. Dist. LEXIS 37086, at *6-7 (D. Utah 2012) (quoting *Unibase Sys. v. Professional Key Punch*, No. C86-213G, 1987 U.S. Dist. LEXIS 16741 (Utah 1987)).

### III. Conclusion

While the Contracts contain a Minnesota choice-of-law provision, Minnesota's only connection to the parties or the transaction is that it is the state of Damarc's incorporation. The Court finds that Utah clearly has the most significant relationship with the parties and the transaction. Mountain West was incorporated and doing business in Utah; the MC-331 Tanker Trailers were manufactured in Utah; the Contracts were negotiated and signed both in Utah and Wisconsin; the inspections occurred in Utah; and Utah was the place of the alleged injury. By far, Utah has the most substantial relationship to the parties and to the transaction. Thus, the Court will apply Utah law to both the claim for breach of contract and the claim for professional negligence.

The Court will enter an Order consistent with the rulings set forth in this Memorandum Decision.

_____END OF DOCUMENT_____

_____oooOooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

The foregoing MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOCKET NO. 57) RE: CHOICE-OF-LAW shall be served on the
following parties in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are
registered CM/ECF users:

- William G. Garbina   wgarbina@cohnekinghorn.com, mcerutti@cohnekinghorn.com
- George B. Hofmann   ghofmann@cohnekinghorn.com, dhaney@cohnekinghorn.com, jthorsen@cohnekinghorn.com
- David H. Leigh   dleigh@rqn.com, dburton@rqn.com, docket@rqn.com
- Richard C. Terry   richard@tjblawyers.com, cbcecf@yahoo.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system,
the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Michael A Steel
Brennan Manna & Diamond, LLC
The Carnegie Building
75 East Market St.
Akron, OH 44308